IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| STEVEN HOLMES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIV. CASE NO. 3:21-cv-578-ECM |
| ) | (WO) |
| FRESENIUS KIDNEY CARE ) | |
| OF TUSKEGEE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Plaintiffs' Rule 6(b) Motion for Extension of Time to Add Party Plaintiff Pursuant to Federal Rule of Civil Procedure 25(a)(1) and Motion to Substitute a Party Plaintiff. (Doc. 37). Plaintiff Steven Holmes ("Mr. Holmes") brought claims for negligence and wantonness against Defendants Bio-Medical Applications of Alabama, Inc. d/b/a Fresenius Kidney Care ("BMA") and Shirley Blevins Carrington ("Carrington"). (Doc. 2-1). Plaintiff Paulette Holmes ("Mrs. Holmes") brought a claim for loss of consortium derivative of her husband's negligence and wantonness claims. (*Id.*). Plaintiffs are represented by the same counsel. The Court reviews whether the case should be dismissed pursuant to Rule 25(a)(1) for failure to timely move to substitute a proper party in the event of a party's death.

## II.  FACTUAL and PROCEDURAL HISTORY

Mr. Holmes passed away on June 6, 2022.  On July 7, 2022, after being informed of his death by his counsel, BMA filed a suggestion of death pursuant to Rule 25(a)(1). (Doc. 30).  Therein, BMA notified Plaintiffs' counsel that "[i]n order to proceed with these claims, a personal representative must be properly substituted as plaintiff." (*Id.* at 1).  The filing certified that service of the suggestion was sent via electronic-mail and first-class U.S. mail to counsel for all parties, including the Holmes.  Plaintiffs' counsel then filed a case status report with the Court, confirming Mr. Holmes' passing and indicating that the case would be revived as soon as an estate could be opened. (Doc. 32).

At a status conference attended by the parties' counsel on September 7, 2022, the Court asked Plaintiffs' counsel about the status of the estate and proper substitution of Mr. Holmes. (*See* Doc. 35).  While counsel stated that the paperwork had been filed to establish the estate, at that time, he did not know the status of the proceedings before the Macon County Probate Court. (*Id.*).  The parties and the Court agreed at the status conference that before the case could proceed according to schedule, the proper substitution of Mr. Holmes with his estate had to occur.  On November 8, 2022, the Court ordered Plaintiffs to "show cause why the Court should not dismiss this action according to Federal Rule of Civil Procedure 25(a)(1)." (Doc. 36).  On November 15, 2022, counsel and the administratix of Mr. Holmes' estate moved for an extension of time to substitute a party plaintiff under Rule 6(b), in accordance with Rule 25(a)(1), which the Court construed as a response to its

2

November 8, 2022, Order. (Doc. 38). The Defendants oppose the Plaintiffs' motions for extension of time and substitution. (Docs. 39, 40).

### III.  DISCUSSION

Rule 25 governs the procedure for a party's death during litigation. When "the claim is not extinguished" and other parties wish to pursue it, someone must move for substitution. FED. R. CIV. P. 25(a)(1). If the motion to substitute "is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." *Id.* The ninety-day clock starts after "a suggestion of death" is "filed with the court and served on a personal representative of the deceased party." *Lizarazo v. Miami-Dade Corr. & Rehab. Dep't*, 878 F.3d 1008, 1009 (11th Cir. 2017). BMA, upon notice of Mr. Holmes' death from his counsel, filed the suggestion of death on July 7, 2022, and served notice of the suggestion on the Plaintiffs' counsel. The clock started ticking that day, and the ninety days ran on October 5, 2022. *See Jaudon v. Sasser*, 2019 WL 1091002, at *2 (S.D. Ga. Mar. 8, 2019) (noting that even if a personal representative has not yet been established, there must be a good-faith effort to serve nonparties with interest in the estate). Yet neither Plaintiffs nor Defendants acted before the ninety-day deadline.

Because service was proper and nobody moved to extend the time to substitute Mr. Holmes until after the ninety days ran, the Court can dismiss him from the action. FED. R. CIV. P. 25(a); *Woodbeck v. Rosie's Cafe & Grill, Inc.*, 2021 WL 2003120, at *1 (M.D. Fla. May 19, 2021). While Rule 25 is phrased in absolute terms, it grants district courts flexibility to extend its ninety-day deadline if it finds "delay was the result of 'excusable

3

neglect.'" *Lizarazo*, 878 F.3d at 1011; *see also* FED. R. CIV. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect.").

Because this request for extension of time and substitution was made well after the ninety-day deadline, it is untimely. The inquiry, therefore, shifts to whether the Plaintiffs have shown excusable neglect. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (footnote omitted). However, a determination of "excusable neglect" under Rule 6(b) must take into account "all relevant circumstances surrounding the party's omission," including:

> (1) the danger of prejudice to the [nonmovant];
> (2) the length of the delay and its potential impact on judicial proceedings;
> (3) the reason for the delay, including whether it was within the reasonable control of the movant; and
> (4) whether the movant acted in good faith.

*Carruth v. Smyth*, 2018 WL 804272, at *4 (N.D. Ala. Feb. 9, 2018) (citing *Pioneer Inv. Servs.*, 507 U.S. at 392); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998) (relying on *Pioneer Investment Services*' excusable neglect standard to analyze untimely motions for extension of time under Rule 6(b)).

Applying these factors, the court in *Carruth* found that a party's arguments for why a Rule 6(b) motion for substitution was untimely did not constitute "specific grounds for why his omissions constitute excusable neglect." 2018 WL 804272, at \*4. The plaintiff's "excusable neglect" arguments, instead, "incorporate[d] the arguments he made . . . for why he did not timely file the motion for substitution," which the court concluded to be "wholly insufficient" grounds for an excusable neglect finding. *Id.* Relevant to the court's finding was the fact that "at any time" before the lapse of the ninety-day deadline, the plaintiff could have "filed a motion for additional time or prompted the Court for guidance, but his motion for an extension of time came only after Defendants' motion to dismiss." *Id.* Additionally, the plaintiff's only excuse for not moving for an extension was his counsel's misunderstanding of a legal rule. *Id.* The court found that granting an extension would only further "impede the slow going of th[e] case even more." *Id.* at 5. The only factor weighing in favor of finding excusable neglect was that there was no evidence of the plaintiff's bad faith. *Id.* at \*5. Balancing the excusable neglect factors, the court found that the plaintiff's "neglect [wa]s not excusable given his extended delay in motioning for substitution of a party, lack of convincing ground for the delay, and prejudice to the progress of litigation in this case." *Id.* at \*5.

Likewise, balancing the excusable neglect factors in this case, the Court finds that Plaintiffs' neglect is not excusable given their extended delay in moving for an extension to substitute a party, the lack of a convincing ground for the delay, and the prejudice to the progress of litigation. *See id.* Despite BMA's notice sent to Plaintiffs' counsel of the need

Applying these factors, the court in *Carruth* found that a party's arguments for why a Rule 6(b) motion for substitution was untimely did not constitute "specific grounds for why his omissions constitute excusable neglect." 2018 WL 804272, at \*4. The plaintiff's "excusable neglect" arguments, instead, "incorporate[d] the arguments he made . . . for why he did not timely file the motion for substitution," which the court concluded to be "wholly insufficient" grounds for an excusable neglect finding. *Id.* Relevant to the court's finding was the fact that "at any time" before the lapse of the ninety-day deadline, the plaintiff could have "filed a motion for additional time or prompted the Court for guidance, but his motion for an extension of time came only after Defendants' motion to dismiss." *Id.* Additionally, the plaintiff's only excuse for not moving for an extension was his counsel's misunderstanding of a legal rule. *Id.* The court found that granting an extension would only further "impede the slow going of th[e] case even more." *Id.* at 5. The only factor weighing in favor of finding excusable neglect was that there was no evidence of the plaintiff's bad faith. *Id.* at \*5. Balancing the excusable neglect factors, the court found that the plaintiff's "neglect [wa]s not excusable given his extended delay in motioning for substitution of a party, lack of convincing ground for the delay, and prejudice to the progress of litigation in this case." *Id.* at \*5.

Likewise, balancing the excusable neglect factors in this case, the Court finds that Plaintiffs' neglect is not excusable given their extended delay in moving for an extension to substitute a party, the lack of a convincing ground for the delay, and the prejudice to the progress of litigation. *See id.* Despite BMA's notice sent to Plaintiffs' counsel of the need

to substitute the party under Rule 25, the Court's inquiries about the substitution at the status conference, and Plaintiff counsel's recognition of the need to substitute Mr. Holmes, Plaintiffs did not try to substitute or move for an extension until over a month after the deadline and after the Court's order requiring them to show cause why the case should not be dismissed under Rule 25(a)(1). Plaintiffs assert that the failure to file the appropriate substitution was because the counsel they hired to represent them in probate court was unaware of an unusual procedure in Macon County Probate Court. (Doc. 27 at 6). Plaintiffs' counsel in this action was also unaware of the procedure and claimed the delay it caused was out of his control. (*Id.*).

Similar to the situation in *Carruth*, Plaintiffs only moved to substitute the party after the ninety-day deadline passed and only on the prodding of this Court. Although Plaintiffs offer a good faith excuse for the untimeliness, they were well aware of the cause of the delay before the ninety-day deadline lapsed yet did not ask this Court for an extension. Furthermore, granting their requested extension would only further delay an already protracted litigation. Given the delay in moving for an extension, the lack of a convincing ground for the delay, and the prejudice to the case's progress in litigation, the factors weigh against finding excusable neglect. Considering this, the Court finds no excusable neglect and declines to extend the substitution period. *See Lizarazo*, 878 F.3d at 1011–12; *see also Woodbeck*, 2021 WL 2003120, at *1; *Carruth*, 2018 WL 804272, at *4–5. Mr. Holmes' claims are therefore due to be DISMISSED pursuant to Rule 25(a)(1).

## IV.  CONCLUSION

Accordingly, for good cause, it is

ORDERED that Plaintiffs' Motion for Extension of Time and to Substitute a Party (doc. 37) is DENIED.  It is further

ORDERED that Mr. Holmes' claims against the Defendants are DISMISSED.

Done this 9th day of December, 2022.

                                                     /s/ Emily C. Marks
                                            EMILY C. MARKS
                                            CHIEF UNITED STATES DISTRICT JUDGE